## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**OLIN MATICE GASKINS,**

        **Plaintiff,**

**v.**                                    **Case No. 2:19-cv-00472**

**WOOD COUNTY;**
**MAGISTRATE JOE KUHL, Wood County Magistrate;**
**SGT. P.M. EDELEN, Parkersburg Narcotics**
**Task Force and SWAT team;**
**SPECIAL AGENT SEAN MCNEES, ATF agent[1];**
**JOHN DOE #3, DEA agent; and**
**UNITED STATES OF AMERICA,**

        **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are the Amended Complaint of Plaintiff Olin Matice Gaskins ("Amended Complaint"), (ECF No. 12); the Motions to Dismiss of Defendant Wood County, (ECF No. 30), Defendant Joe Kuhl, (ECF No. 33), and Defendant P. M. Edelen, (ECF No. 46); and the Motions to Dismiss, or in the alternative, for Summary Judgment of Defendants United States of America and Special Agent Sean McNees. (ECF Nos. 40, 60). This matter is assigned to the Honorable John T. Copenhaver, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] John Doe #2 has been identified as Special Agent Sean McNees; therefore, the Clerk is directed to substitute Special Agent Sean McNees for John Doe #2.

For the reasons that follow, the undersigned **RECOMMENDS** that the Motions to Dismiss of Defendants Wood County, Joe Kuhl, Special Agent Sean McNees, and the United States of America, (ECF Nos. 30, 33, 40, 60) be **GRANTED**; that Defendant Edelen's Motion to Dismiss, (ECF No. 46), be **DENIED**, in part, and **GRANTED**, in part; that Defendants Wood County, Joe Kuhl, Special Agent Sean McNees and the United States of America be **DISMISSED** and **REMOVED** from the style of the case; that, to the extent Plaintiff intended to include the Parkersburg Narcotics Task Force and SWAT team as defendants, those entities be **DISMISSED** and **REMOVED** from the style of the case; and that Gaskins and the remaining defendants, Sgt. P. M. Edelen and John Doe #3, be permitted to conduct discovery on the claims that remain.

## I.   <u>Factual and Procedural History</u>

On March 7, 2018, Gaskins was charged in a seven-count indictment in the Circuit Court of Wood County, West Virginia with drug offenses and illegal firearm possession. *West Virginia v. Gaskins*, Case No. 18-F-89 (2018); (ECF No. 12 at 31–34). The case was later dismissed by the state court upon the request of the Assistant Prosecuting Attorney after Gaskins was charged in federal court for similar offenses. (*Id.* at 42). The federal criminal complaint against Gaskins, which alleged a drug offense, *United States v. Gaskins*, Case No. 2:18-mj-00043 (June 28, 2019), was also later dismissed. (*Id.* at 54, 58). Gaskins is currently incarcerated at Mount Olive Correctional Complex serving a life sentence imposed in May 2018 by the Circuit Court of Jefferson County, West Virginia for illegal firearm possession stemming from a traffic stop unrelated to any of the factual allegations in the Amended Complaint. *See State v. Gaskins*, No. 18-0575, 2020 WL 3469894 (W. Va. June 25, 2020), *cert. denied sub nom. Gaskins v. W. Virginia*, No. 20-7505, 2021 WL 1602710 (U.S. Apr. 26, 2021).

A.    **Gaskins's Amended Complaint**

Gaskins initiated this action on June 20, 2019, and on January 13, 2021, he filed an Amended Complaint alleging violations of his constitutional rights. (ECF Nos. 2, 12). In the Amended Complaint, Gaskins contends that his rights were violated by an unreasonable search of his residence, which led to his "false imprisonment" from April 26, 2018 through June 28, 2019. (ECF No. 12 at 1). Gaskins claims that Defendants' actions cost him "time, great loss of property, dislocation of family, and most importantly the custody of [his] new born child." (*Id.*).

According to Gaskins, on January 4, 2018, a search warrant was executed at his residence located at 316 5th Street, Apartment #4, in Parkersburg, West Virginia. Gaskins states that the warrant was issued based upon representations by Defendant Edelen that the Parkersburg Narcotics Task Force and SWAT team had made controlled drug buys at Gaskins's residence. (ECF No. 12 at 2). Gaskins and his pregnant girlfriend were placed in handcuffs during the search and were taken to the Parkersburg City Police Department where they were questioned by Defendant Sean McNees and an officer with the federal Drug Enforcement Agency. (*Id.*). Gaskins claims that he was threatened by Defendant McNees during the interrogation and was ultimately transported to the North Central Regional Jail.

Gaskins alleges that while he was being interrogated and arrested, his girlfriend's mother appeared at the Parkersburg City Police Department and demanded to see the search warrant. (*Id.* at 3). Upon reviewing the warrant, the mother noted that the warrant authorized a search of Apartment #1, not Apartment #4, where her daughter lived with Gaskins. She also pointed out that the names on the warrant were not those of her daughter and Gaskins. (*Id.*). Thereafter, his girlfriend's mother went to Gaskins's

apartment only to find it empty save for a bed, two couches, a stove, and a mini refrigerator. (ECF No. 12 at 3).

Gaskins alleges that the original search warrant identified an apartment occupied by a different couple in another unit of the apartment building, and Defendant Edelen, in order to cover up the error and obtain an alternate search warrant, falsified information and documents. He then lied under oath to Magistrate Joe Kuhl, who issued the warrant. (*Id.*). Gaskins claims that the Wood County Prosecuting Attorney knew that the original search warrant was "void" and that Gaskins "should not have been prosecuted on [an] indictment" that was subsequently returned. (*Id.* at 3). He also contends that Defendant Edelen later "falsified information to a Federal Judge under oath" by providing an incorrect address for Gaskins, and that the "Parkersburg Narcotics Task Force" assembled by the United States and Wood County caused him to lose "his family, his only child, his liberty, freedom, absolutely everything he has ever owned." (*Id.* at 4).

According to Gaskins, Defendants' actions show "malicious abuse of power, and aided in malicious prosecution." (*Id.*). He contends that Defendants "individually and collectively[] demonstrated complete disregard for the amendments of the United States Constitution and laws put in place to protect citizens." (*Id.*). He argues that the Fourth Amendment is implicated in the execution of the search warrant, because it was facially invalid. (*Id.* at 5). Gaskins asks for reimbursement for the items lost by seizure, which he lists in the Amended Complaint, and for compensatory and exemplary damages, attorney fees, and court costs. (*Id.* at 5–6).

### B.    Defendant Wood County's Motion to Dismiss

On March 24, 2021, Defendant Wood County, self-identifying as the "Wood County Commission," filed a motion to dismiss Gaskins's Amended Complaint along with

an accompanying memorandum of law. (ECF Nos. 30, 31). Defendant Wood County notes that the only allegation against it in the Amended Complaint states that Wood County, along with Defendant United States, put together a task force "that was reckless in handling investigations on drug and gun crimes," "showed malice and violated [Gaskins's] constitutional rights," and "showed malicious abuse of power, and aided in malicious prosecution by the Wood County Court and the United States Court." (ECF No. 31 at 3–4) (internal quotation marks omitted). Defendant Wood County argues that the Amended Complaint should be dismissed because Gaskins "failed to plead any actionable claims" against it as the "thrust of allegations" in the Amended Complaint concern officers and agents who were not employed by the Wood County Commission. (*Id.* at 5–7). It contends that it cannot be held liable for the actions of those it has no "knowledge of, or exert any form of control over." (*Id.* at 7). Defendant Wood County also claims that, in a § 1983 action, it cannot be liable for the actions of employees under a theory of respondeat superior. (*Id.* at 8).

Gaskins responded to Defendant Wood County's motion on April 16, 2021. (ECF No. 39). He emphasizes that he "was incarcerated and also held under indictment for almost 4 months by Wood County Magistrates." (*Id.* at 1). He notes that the Wood County Commission employs other defendants in this matter, and those defendants authorized the supposedly illegal search warrant, and that Defendant Wood County, therefore, had involvement in the underlying criminal investigation giving rise to his claims. (*Id.* at 1–2).

In its reply filed April 23, 2021, Defendant Wood County reiterates that no allegations against it support any cognizable causes of action, necessitating dismissal of the Amended Complaint against it. (ECF No. 45 at 1–2). Defendant Wood County reasons

that none of the recognized bases for municipal liability described by the Fourth Circuit apply to Gaskins's allegations, and liability under respondeat superior is unavailable. Therefore Gaskins's Amended Complaint should be dismissed for failure to state a claim. (*Id.* at 3–8).

### C.    Defendant Kuhl's Motion to Dismiss

Defendant Kuhl filed a motion to dismiss and accompanying memorandum of law on March 26, 2021. (ECF Nos. 33, 34). Defendant Kuhl argues that he is not subject to suit under § 1983 because he is a state official acting in his official capacity and thus is not a "person" for the purposes of the statute. (ECF No. 34 at 3–4). Moreover, he argues, he is entitled to judicial immunity regarding the issuance of the allegedly defective search warrant, the sole accusation against him in the Amended Complaint. (Id. at 4–6). Finally, Defendant Kuhl posits that the relevant statute of limitations—specifically, the time frame for filing personal injury suits in West Virginia—has expired because the deadline expired on January 28, 2019, two years after the date the supposedly defective warrant issued. (*Id.* at 6–8).

On March 26, 2021, the undersigned entered an order directing Gaskins to respond to Defendant Kuhl's motion. (ECF No. 35). Gaskins filed no response.

### D.    Defendant United States' Motion to Dismiss

On April 20, 2021, Defendant United States of America filed a motion to dismiss or, alternatively, for summary judgment, and a contemporaneous memorandum of law. (ECF Nos. 40, 41). Assuming that Gaskins is asserting a claim against it for constitutional violations pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ("*Bivens* action"), Defendant United States argues that it is not subject to liability. (ECF No. 41 at 4). Defendant United States contends that

supervisory liability is not applicable in a *Bivens* action, and that Gaskins has not asserted that it or any of its employees "participated in obtaining or executing the warrant at issue." (*Id.*). In addition, Defendant United States stresses that it is not subject to liability for negligence because Gaskins failed to satisfy the requirements of the Federal Tort Claims Act (FTCA). (*Id.* at 5–6).

Gaskins responded to Defendant United States' motion on May 10, 2021. (ECF No. 54). He provides that he was "under a hold" related to a federal criminal case from April 26, 2018 until June 28, 2019. (*Id.* at 1). The criminal case was based on a complaint signed by Defendant Edelen and involved "falsified information and documents" and the assistance of Defendant Parkersburg Narcotics Task Force and SWAT Team ("the Task Force") as well as "the A.T.F. and D.E.A." (*Id.*). He contends that the actions of these parties lead to his arrest, false imprisonment, and malicious prosecution. (*Id.*).

### E.    Defendant Edelen's Motion to Dismiss

On April 23, 2021, Defendant Edelen filed a motion to dismiss and memorandum of law. (ECF Nos. 46, 47). He advances simply that claims against the Task Force and SWAT team should be dismissed because city police departments in West Virginia "are merely vehicles through which the City fulfills its policing functions," have no independent legal existence, and cannot be sued. (ECF No. 47 at 1–2).

Gaskins responded to the motion on May 10, 2021. (ECF No. 55). He asserts that he has "evidence of all court papers and documents" and proof that all the named parties were involved with the alleged falsification of documents, false imprisonment, and malicious prosecution. (*Id.* at 1). He attached a series of documents related to his underlying criminal case. (*Id.* at 5–54).

In his May 24, 2021 reply, Defendant Edelen reiterates the argument presented in the motion and notes that Gaskins did not substantively counter it in his response. (ECF No. 59 at 1–2). He argues again that the Task Force and SWAT team are not proper parties to this lawsuit. (*Id*. at 2).

### F.    Defendant McNees's Motion to Dismiss

On June 30, 2021, Defendant Special Agent Sean McNees filed a motion to dismiss or, alternatively, for summary judgment, and a memorandum of law. (ECF Nos. 60, 61). Defendant McNees argues that, should the Court construe Gaskins's claim to be a *Bivens* action, Gaskins is unable to assert a claim against him to the extent that such claims are made against him in his official capacity. (ECF No. 61 at 5). As to Gaskins's Fourth Amendment claims, Defendant McNees posits that Gaskins fails to state a claim alleging a constitutional violation against him. (*Id*. at 5–6). Defendant McNees contends that Gaskins does not allege that he participated in the execution of the allegedly defective search warrant, and his only involvement in the criminal investigation was questioning Gaskins following his arrest. (*Id*.). He also contends that neither the United States Constitution, nor West Virginia law, required him to present Gaskins with the warrant given that he was not present for the warrant's execution. (*Id*. at 6–7). Defendant McNees claims that Gaskins never asked him for the search warrant when he was questioning Gaskins, as evidenced by an audio recording of the interaction. (*Id*. at 6). However, even if Gaskins had asked Defendant McNees for a copy of the warrant, Defendant McNees argues that he was under no obligation to provide one and, moreover, did not have a copy to provide. (*Id*. at 6–7). Defendant McNees notes that Gaskins "does not articulate how his Fifth Amendment rights were violated." (*Id*. at 7). To the extent Gaskins claims that his right against self-incrimination was violated by Defendant McNees's alleged threat

that if he did not admit to the charges his girlfriend would be charged, Defendant McNees argues that he did not make such a threat and even if he did, the statement does not constitute a Fifth Amendment violation. (*Id.* at 7–9).

Defendant McNees next contends that Gaskins does not properly state a violation of the Eighth Amendment because nothing in the record suggests that Gaskins received a longer sentence in his underlying criminal case because of the search warrant. (*Id.* at 9–10). Defendant McNees argues that Gaskins's claim is precluded by the Supreme Court's ruling in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), which limited the circumstances under which a plaintiff can bring an action pursuant to *Bivens*. (*Id.* at 10–12). Furthermore, Defendant McNees argues, his actions are protected by qualified immunity. (*Id.* at 12–13). Finally, Defendant McNees posits that any claims construed as being brought under the FTCA must be dismissed as to him because only the United States can be named in such a suit. (*Id.* at 13–14). He maintains that any other claims not encompassed by his previous arguments should be given that Gaskins does not allege conduct that could be considered illegal, and thus concludes that all claims against him must be dismissed. (*Id.* at 14–15).

On July 26, 2021, Gaskins filed a response to Defendant McNees's motion. (ECF No. 64). He states that the allegations he has made are true, and additionally adds that he saw Defendant McNees "the night before in the JIMMY JOHNS parking lot before closing[,] and on other accountings following him to stores in a newer model TOYOTA TACOMA TR5." (*Id.* at 1). He states that the DVD of the interrogation, which was provided to him, "either was not software compatible or had nothing on it." (*Id.*). He repeats his allegation that Defendant McNees threatened him by stating that the charges would be put on his girlfriend if Gaskins refused to admit to them. (*Id.*). He contends that he has

answered "everything" and provided the Court with every defendant he believes to be involved to the best of his knowledge. (*Id.* at 2). He reiterates his contention that his charges were based on false pretenses, that he will never hold his girlfriend again, and his child was taken from family for over five months before being adopted by the child's grandmother while the defendants "go home to their families everyday and enjoy life." (*Id.*). He restates his request for justice in this matter. (*Id.*).

## II.    <u>Standard of Review</u>

### A.    **Motions to Dismiss**

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the amended complaint are true and will draw all reasonable inferences in Plaintiff's favor as the nonmoving party. *Burbach*, 278 F.3d at 405–06. The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988)).

While the Court "take[s] the facts in the light most favorable to the [P]laintiff, …

[the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the Amended Complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct plaintiffs' legal arguments for them, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### B.    Alternative Motions for Summary Judgment

Defendants United States and McNees alternatively move for summary judgment. Summary judgment is proper under Fed. R. Civ. P. 56 when no genuine issue of material fact is in dispute, and the moving party is entitled to judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A fact is material if it "might affect the outcome of the suit under the governing law," and a disputed issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. The party moving for summary judgment bears the initial burden of showing an absence of evidence that demonstrates the existence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

If the moving party meets this burden, then the burden shifts to the nonmoving party, who "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322, n.3. The nonmoving party must do more than rely upon the allegations or the denial of allegations contained in his pleadings to defeat a motion for summary judgment; instead, he must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson,* 477 U.S. at 256. Concrete evidence includes "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must not resolve disputed facts, nor weigh the evidence. *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1239 (4th Cir. 1995). Instead, the court must accept as true the facts asserted by the nonmoving party and review the evidence "draw[ing] all justifiable inferences" in its favor. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 520 (1991).

Even still, the "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent entry of summary judgment. *Anderson,* 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party, there is no genuine issue for trial." *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009),

(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Thus, while any permissible inferences to be drawn from the underlying facts "must be

viewed in the light most favorable to the party opposing the motion," *Matsushita Elec.*

*Indus. Co*, 475 U.S. at 587, "[i]f the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818

F.2d 1126, 1128 (4th Cir. 1987) (quoting *Anderson*, 477 U.S. at 249-50).

## III.  <u>Discussion</u>

As noted above, Gaskins brings his Amended Complaint alleging various violations

of his constitutional rights as to both federal and state government actors. (ECF No. 12).

Such claims as to state government actors are best construed as being brought under the

federal civil rights statute, 42 U.S.C. § 1983, while claims against federal government

actors are properly construed as claims brought pursuant to a *Bivens* action. A *Bivens*

action is similar to a claim made under 42 U.S.C. § 1983; however, federal officials cannot

be sued under § 1983 because they do not act under color of state law. *See Harlow v.*

*Fitzgerald*, 457 U.S. 800, 814–20 & n.30 (1982). *Bivens* actions and actions under § 1983

are treated as "counterparts," and case law interpreting the two is viewed as

interchangeable. *See Farmer v. Brennan*, 511 U.S. 825, 839 (1994): *see also Fitzgerald,*

457 U.S. at 818 n.30; *Rios v. Slater*, No. CV 4:16-1314-MGL-TER, 2017 WL 1058453, at

*2 (D.S.C. Mar. 2, 2017), *report and recommendation adopted*, No. CV 4:16-1314-MGL,

2017 WL 1048355 (D.S.C. Mar. 20, 2017). All but one defendant in this matter, Defendant

John Doe #3, has filed a motion to dismiss Gaskins's claims. Of note, Defendant Edelen

seeks dismissal of the Amended Complaint, but only asserts arguments related to the

Parkersburg Narcotics Task Force and the SWAT team. Defendant Edelen does not

expressly argue that he should be dismissed at this point in the litigation. Therefore, the claims against Edelen in his personal capacity are not addressed in the Proposed Findings and Recommendations. Each dispositive motion is addressed in turn below.

### A.    Defendant Wood County's Motion to Dismiss

Defendant Wood County moves for dismissal on the basis that Gaskins pleads no actionable claims against it; it is not subject to liability under a theory of respondeat superior or municipal liability; and the "thrust of allegations" in the Amended Complaint concern officers and agents it does not employ. (ECF Nos. 31 at 5–8, 45 at 3–8). Gaskins counters that Defendant Wood County employs defendants in this matter who authorized an illegal search warrant. (ECF No. 39 at 1).

Defendant Wood County is correct that it cannot be held liable for constitutional violations under § 1983 simply because of actions of the individuals it employs. "It is well established that the doctrine of respondeat superior does not apply in § 1983 claims." *Hurt v. Corr. Ofc. Rounds*, No. CV DKC-15-596, 2016 WL 1059359, at *8 (D. Md. Mar. 17, 2016) (citing *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004)). While a municipality may be liable under § 1983 when a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom or policy, the plaintiff must expressly identify the suspect law, custom, or policy in his complaint. *See Bd. of County Commis of Bryan County v. Brown,* 520 U.S. 397, 411 (1997) ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988) ("[M]unicipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, that is, acts which

14

the municipality has officially sanctioned or ordered.") (internal quotations omitted); *Edwards,* 178 F.3d at 244 (municipal liability results when the execution of an unconstitutional governmental policy or custom inflicts injury); *Jordan by Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir. 1994) ("Section 1983 plaintiffs seeking to impose liability on a municipality must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights.").

In the Amended Complaint, Gaskins alleges that the Wood County Prosecuting Attorney knew that the warrant executed at Gaskins's residence was "void," but continued to prosecute Gaskins anyway. However, Gaskins provides no factual allegations that the Prosecuting Attorney made that decision based on an official policy or custom of the Wood County Commission, or that the Commission was deliberately indifferent to a pattern of unconstitutional decisions made by the Prosecuting Attorney. Therefore, the Amended Complaint does not state a plausible claim against Defendant Wood County based on the Prosecuting Attorney's actions.

Gaskins further alleges that Defendant Wood County, along with the United States, "put together" the Parkersburg Narcotics Task Force and SWAT team, and they are "reckless" in the handling of drug and firearms investigation. Nevertheless, as Defendant Wood County points out, the Task Force and SWAT team are entities of the Parkersburg Police Department, and are not employed, directed, or supervised by the Wood County Commission. Consequently, the actions of these teams do not in any way involve an official custom or policy of Defendant Wood County.

Finally, Gaskins contends that Magistrate Joe Kuhl was a county employee and improperly issued a search warrant that led to Gaskins's arrest. The Court agrees with

Defendant Wood County that the actions of Defendant Kuhl do not give rise to a plausible claim against the Wood County Commission. In West Virginia, magistrates are judicial employees of the State. *Atkinson v. County Commission,* 489 S.E.2d 762, syl. pt. 4, (W. Va. 1997). They are not controlled or directed by the county in which they serve, and do not operate under customs and policies of the county. Therefore, Defendant Wood County is in no way responsible for Defendant Kuhl's actions. In any event, Gaskins includes no factual allegations in the Amended Complaint that demonstrate wrongdoing by Defendant Kuhl. To the contrary, Gaskins claims that Defendant Edelen obtained a search warrant from Defendant Kuhl by providing false information and documents, under oath. (ECF No. 12 at 3). Gaskins does not allege that, had the information provided to Kuhl been correct, the warrant would still have been improper.

In sum, Gaskins offers no basis on which relief could be granted in this matter except for Defendant Wood County's position as employer of other possible violators, which does not state a plausible claim against the Wood County Commission. Therefore, the undersigned **FINDS** that the claims against Defendant Wood County should be dismissed.

## B. Defendant Kuhl's Motion to Dismiss

Defendant Kuhl moves for dismissal on the ground that he is not a suable "person" under § 1983, is entitled to judicial immunity, and the statute of limitations for the claim has expired. (ECF No. 34 at 3–8). Gaskins has not filed a response to the motion, and therefore the undersigned **FINDS** that it is unopposed.

### 1. *Availability of remedy under § 1983*

Defendant Kuhl is correct that he is not subject to suit for conduct undertaken in his official capacity because state officials acting in such capacity are not suable persons

under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). Here, where Gaskins challenges the issuance of a supposedly deficient warrant by Defendant Kuhl as a Wood County Magistrate, (ECF No. 12 at 44), he attempts to sue Defendant Kuhl in his official capacity. Accordingly, the undersigned **FINDS** that Defendant Kuhl is not a "person" for the purposes of § 1983. *See Will*, 491 U.S. 58.

However, even if Gaskins meant to sue Defendant Kuhl in his personal capacity, Defendant Kuhl is protected by judicial immunity from any liability related to the issuance of the search warrant. "[J]udges are absolutely immune from suit for a deprivation of civil rights brought under 42 U.S.C. § 1983, under certain conditions." *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (citing *Pierson v. Ray*, 386 U.S. 547 (1967)). In *Pierson v. Ray*, the Supreme Court granted certiorari to consider whether a judge was liable for damages under 42 U.S.C. §1983 for an unconstitutional conviction. The Court presented its rationale in applying the doctrine of judicial immunity:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction...This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences"...It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

386 U.S. at 553–54.

Two requirements must be met in order for judicial immunity to apply. First, the judge's action cannot have been undertaken in the clear absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 357 (1978). The question is "whether at the time [the judge] took the challenged action, he had jurisdiction over the subject matter before him," and, in answering that question, "the scope of the judge's jurisdiction must be construed broadly." *Id.* at 356. The second condition is that the act must be a "judicial act." *Id.* at 360-62. Determining whether an act by a judge is a "judicial act" involves consideration of "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and…the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Id.* at 362.

It is obvious that Defendant Kuhl had jurisdiction as a Wood County Magistrate to issue a search warrant to be executed in Wood County, and the issuance of a search warrant is unquestionably a judicial act. *See, e.g.*, *Murphy v. Ross*, No. 3:14CV870, 2015 WL 1787351, at *2 (E.D. Va. Apr. 15, 2015) (holding that absolute immunity applies to the issuance of search warrant by state magistrate). Even if the warrant were altogether defective, Defendant Kuhl is not subject to liability in a § 1983 action for its issuance. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' ") (citation omitted). Gaskins does not allege that Defendant Kuhl took any action that infringed upon his rights except the issuance of a warrant based on false information. Therefore, the undersigned **FINDS** that Defendant Kuhl is protected from liability in this action by judicial immunity. Furthermore, as explained above, Gaskins claims that the warrant was issued based on fraudulent information

provided to Defendant Kuhl. Gaskins does not allege that Defendant Kuhl knew the information was fraudulent, or that the search warrant would have been improperly issued by Kuhl if the information given to him was accurate.

### 2.    *Statute of limitations*

While the basis detailed above is sufficient to support the dismissal of Gaskins's claims against Defendant Kuhl, it is clear to the undersigned that some address of Defendant Kuhl's contentions concerning the statute of limitations is warranted. Defendant Kuhl contends that the statute of limitations in this action expired on January 28, 2019, several months before the original complaint was filed and almost two years before he was named as a defendant. (ECF No. 34 at 7). For the reasons set forth below, Defendant Kuhl is incorrect.

In an action brought pursuant to 42 U.S.C. § 1983, the statute of limitations is determined by the law of the State in which the action is brought, while federal law governs when the limitation period accrues. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *A Society Without a Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). For either a personal injury claim or illegal search and seizure claim, the claim is subject to a two-year statute of limitations under West Virginia law. *See* West Virginia Code § 55-2-12(b). *See, e.g.*, *Hill v. Simms*, No. 3:07-CV-00349, 2010 WL 3852039, at *2 (S.D.W. Va. Sept. 30, 2010), *aff'd* 418 F. App'x 184 (4th Cir. 2011) (applying two year statute of limitations to search and seizure claim); *Dunigan v. Purkey*, No. 2:17-CV-00040, 2018 WL 4087564, at *9 (N.D.W. Va. July 25, 2018), *report and recommendation adopted,* 2018 WL 4059424 (N.D.W. Va. Aug. 23, 2018), *appeal dismissed,* No. 19-6236, 2019 WL 3815748 (4th Cir. Apr. 18, 2019) (same); *Rosenthal v. Jezioro*, No. 2:08-CV-81, 2008 WL 4900563, at *5-6 (N.D.W. Va. Nov. 13, 2008) (same). Under federal law, the statute of

limitations began to run when Gaskins had "knowledge of his claim or when he [wa]s put on notice—e.g., by the knowledge of the fact of injury and who caused it—to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." *Kanode v. W. Virginia*, No. CV 1:13-cv-16360, 2015 WL 9589729, at *3 (S.D.W. Va. Dec. 3, 2015), *report and recommendation adopted,* 2015 WL 9581845 (S.D.W. Va. Dec. 30, 2015), *judgment entered sub nom. Kanode v. State*, 2015 WL 9582708 (S.D.W. Va. Dec. 30, 2015). When a person is present and aware of the search and seizure, the claim generally accrues at that time. *Dunigan,* 2018 WL 4087564, at *9 ("In the typical search and/or seizure, because the plaintiff is usually present during the same, he or she knows the facts and circumstances, the accrual of his or her Fourth Amendment claims happens on the same day of the search and/or seizure."); *Edokobi v. U.S. Dep't of Justice*, No. TDC-17-3639, 2019 WL 3945482, at *3–4 (D. Md. Aug. 21, 2019) (stating that statute of limitation on search and seizure claim began on date of search, not upon favorable termination of the case against the person).

Gaskins contends, and the record supports, that Defendant Kuhl issued the search warrant on December 28, 2017. (ECF No. 12 at 44). The search warrant was executed on January 4, 2018. (ECF No. 12 at 2). Defendant Kuhl erroneously asserts that the warrant was issued on January 28, 2017, and thus incorrectly concludes that the "critical date for filing this case...was January 28, 2019." (ECF No. 34 at 7). In reality, the statute of limitations for this § 1983 claim would have expired, at the earliest, in January 2020 if Gaskins had not already filed his action by then. Accordingly, the undersigned **FINDS** that the statute of limitations for Gaskins's claims did not expire before he filed this action.

### C.    Defendant United States' Motion to Dismiss

Defendant United States moves to dismiss claims against it as it is not subject to liability in a *Bivens* action because supervisory liability is not applicable, neither it nor any of its employees participated in the execution of the allegedly deficient warrant, and it cannot be held liable for negligence under the FTCA. (ECF No. 41 at 4–6). Gaskins counters that the federal criminal case against him was based on falsified information in a complaint as well as actions of other defendants and federal agencies. (ECF No. 54 at 1).

Defendant United States is correct that it is not a proper party in a *Bivens* action. The federal government and its agencies are not subject to suit absent a waiver of sovereign immunity. *Loeffler v. Frank*, 486 U.S. 549, 554 (1988). "The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001). Accordingly, a *Bivens* claim must be brought "against the offending individual officer, subject to the defense of qualified immunity," and a "prisoner may not bring a *Bivens* claim against the officer's employer, the United States." *Id.* at 72. Federal agencies are also inappropriate defendants in a case brought pursuant to *Bivens*. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 485-86 (1994). Gaskins's claims against the United States for monetary damages cannot proceed under the exception to sovereign immunity established in *Bivens* insofar as he attempts to sue the United States directly. *See Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government."); *see also Wilson v. FCI Gilmer*, No. 3:18-CV-42, 2018 WL 3910852, at *2 (N.D.W. Va. July 18, 2018), *report and recommendation adopted*, No. 3:18-CV-42, 2018 WL 3910818 (N.D.W. Va. Aug. 15, 2018) ("Plaintiff has named as defendants FCI Gilmer, a facility which operates under the Bureau of Prisons, and the United States government.

Neither defendant is a proper party in a *Bivens* action."); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002), *aff'd*, 540 U.S. 614 (2004) ("[A] *Bivens* action does not lie against either agencies or officials in their official capacity."); *Lee v. Dir., Fed. Bureau of Prisons*, No. CIV.A. 5:06-CV-00452, 2009 WL 2060116, at *2 (S.D.W. Va. July 8, 2009) ("However, *Bivens* claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities.").

Even though, as Gaskins notes, some of the other defendants are employed by Defendant United States, Defendant United States cannot itself be sued for the actions of its employees in this matter. Accordingly, the undersigned **FINDS** that Gaskins fails to state a claim upon which relief can be granted and Defendant United States's motion to dismiss any claims against it should be granted.

### D.    Defendant Edelen's Motion to Dismiss

Defendant Edelen moves to dismiss the Parkersburg Narcotics Task Force and SWAT team from the case, because, as he argues, police departments cannot be sued independently from the city where they operate. (ECF No. 47 at 1–2). In response, Gaskins provides only that he has proof that the parties named in the action were involved in the conduct giving rise to his claims, and attaches documents related to his criminal case. (ECF No. 55 at 1).

The caption of the Amended Complaint suggests that Gaskins did not intend to sue the Task Force and SWAT team; rather, he meant to sue Defendant Edelen, who was a member of the Task Force and SWAT team that executed the search warrant on Gaskins's residence. However, to the extent that Gaskins intended to sue the Task Force and SWAT team, the undersigned **FINDS** that these teams are not proper party defendants. *See Tofi v. Napier*, No. 2:10-CV-01121, 2011 WL 3862118, at *4 (S.D.W. Va. Aug. 31, 2011) (holding

that a city's police department is not a separate entity subject to suit, but instead is merely a subdivision of the city that created it). If Gaskins sought to sue teams of the Parkersburg Police Department, then the proper party is the City of Parkersburg.

As previously stated, Defendant Edelen does not argue that he himself is improperly joined in the suit, nor does he move for dismissal on his own behalf at this early stage of the litigation. To the contrary, he explains that he filed the motion to dismiss in an effort to "clarify the proper parties to this lawsuit." (ECF No. 47 at 1). Accordingly, to the extent that the Motion to Dismiss applies to Defendant Edelen, the undersigned **FINDS** that dismissal should not be granted at this time.

### E.    Defendant McNees's Motion to Dismiss

Defendant McNees moves for dismissal of the claims against him, arguing that he is not subject to suit in a *Bivens* action for conduct undertaken in his official capacity. (ECF No. 61 at 5). Defendant McNees advances that his actions did not implicate Gaskins's Fourth Amendment rights as Defendant McNees did not participate in the execution of the supposedly deficient search warrant. He emphasizes that his only involvement in the criminal investigation of Gaskins was the custodial interrogation, and he was not required to present Gaskins with a copy of the search warrant upon request. (*Id.* at 5–7). He reasons that he is not subject to liability for violating Gaskins's Fifth Amendment right against self-incrimination because Gaskins was made aware of his rights before the interrogation and proceeded to give a statement. In any event, if McNees threatened to charge Gaskins's girlfriend with possession of the drugs and firearms found in the residence, such a threat was not illegal. (*Id.* at 7–9). Defendant McNees argues that the Eighth Amendment is not implicated because no evidence suggests Gaskins received a longer sentence due to any of the alleged conduct. (*Id.* at 9–10). He also contends that

Gaskins's claims cannot be brought pursuant to *Bivens;* that he is protected by qualified immunity; that he cannot be sued under the FTCA; and that none of the conduct alleged is illegal. (*Id.* at 14–15). In response, Gaskins appears to dispute Defendant McNees's description of the limited involvement he had in the case, asserting that he saw Defendant McNees following him at times prior to the execution of the search warrant and his arrest. (ECF No. 64 at 1).

 Defendant McNees is correct that none of the conduct Gaskins alleges implies a violation of his constitutional rights. Gaskins asserts that Defendant McNees questioned him after he was arrested, refused to give him a copy of the search warrant, and threatened to put the charges on Gaskins's girlfriend if he would not admit to them. (ECF No. 12 at 2). These contentions, even if true, do not constitute a deprivation of any of Gaskins's rights, and Gaskins's claims against Defendant McNees should be dismissed.

Even assuming Gaskins is suing Defendant McNees in his personal rather than official capacity, Gaskins does not provide a factual basis for his claims that would support a finding that Defendant McNees violated his constitutional rights. Gaskins does not contend that Defendant McNees participated in the execution of the search warrant, claiming only that Defendant McNees refused his request to see a copy of the warrant after questioning him. (ECF No. 12 at 2). The undersigned found no legal authority stating or implying that a criminal suspect has a right under the Fourth Amendment to be presented with a copy of a search warrant by an interrogating officer who did not participate in the execution of said warrant. Here, where Gaskins alleges that Defendant McNees's involvement in the case is limited to questioning him at the police station after his arrest and insinuating that his girlfriend would be charged if he would not admit to them, there is no basis to conclude that Defendant McNees violated Gaskins's Fourth

Amendment rights. Gaskins claims in his response to the motion that he also witnessed Defendant McNees surveilling him in the parking lot of Jimmy John's and following him, (ECF No. 64 at 1), but these assertions likewise do not implicate Gaskins's rights under the Fourth Amendment. Accordingly, the undersigned **FINDS** that Gaskins fails to state a claim against Defendant McNees under the Fourth Amendment.

Likewise, Gaskins fails to provide support for his claim that Defendant McNees violated his rights when Defendant McNees "verbally threatened" to put charges on Gaskins's "pregnant girlfriend" and then "smiled." (ECF No. 12 at 3). As an initial matter, Gaskins does not indicate which rights he believes were violated by the supposedly threatening communication. Defendant McNees believes Gaskins is attempting to establish that the "threat" violated Gaskins's Fifth Amendment right against self-incrimination; however, according to the Amended Complaint, even after Defendant McNees made this threat Gaskins stated, "I don't know what he's talking about," and did not provide additional information or admit to any wrongdoing. (*Id.* at 2). It is unclear how Gaskins could claim a violation of his Fifth Amendment right not to incriminate himself when he admits he made no incriminating statements.

Gaskins suggests that Defendant McNees attempted to coerce Gaskins into admitting to misconduct so that his girlfriend would not be criminally charged, but even if the conversation took place as Gaskins recounts, no such confession occurred and no incriminating statement was extracted. A statement is improperly coerced in violation of the Fifth Amendment when the "defendant's will has been overborne or his capacity for self-determination critically impaired." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (internal quotation marks and citations omitted); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). The Fifth Amendment is obviously not implicated

here where Gaskins cannot show that his will was overborne by Defendant McNees. The cajoling and "verbal threats" were not so severe as to even *persuade* Gaskins to make a self-incriminating statement, let alone *force* him to do so.

As Respondent points out, many circuits that have considered the issue have concluded that the interrogation tactic allegedly used by Defendant McNees in this situation—reminding or informing a criminal suspect about the possibility of the suspect's partner or family being criminally implicated—is permissible. *See, e.g.*, *United States v. Hufstetler*, 782 F.3d 19, 22 (1st Cir. 2015) (following First Circuit analysis regarding whether interrogation method "overtook the will" of the defendant); *Allen v. McCotter*, 804 F.2d 1362, 1363 (5th Cir. 1986) (holding that confession was not involuntary where officer had probable cause to arrest defendant's wife). Even if Defendant McNees had been able to extract a statement from Gaskins by threatening to charge his girlfriend, such an action would not have violated Gaskins's Fifth Amendment rights. Defendant McNees notes that there was probable cause to arrest Gaskins's girlfriend as well and pointing this out to Gaskins was not impermissibly coercive. *See United States v. Pelton*, 835 F.2d 1067, 1073 (4th Cir. 1987) ("Truthful statements about [the defendant's] predicament are not the type of "coercion" that threatens to render a statement involuntary."). Therefore, the undersigned **FINDS** that Gaskins fails to state a claim against Defendant McNees for violation of his rights under the Fifth Amendment.

As to the Eighth Amendment, Defendant McNees asserts that Gaskins cannot state a claim because there is no indication that Gaskins received a higher sentence on the unrelated state conviction for which he is currently serving a life sentence. (ECF No. 61 at 9–10). Defendant McNees is correct. Gaskins has made no colorable argument that any of the actions undertaken by Defendant McNees contributed in any way to the severity of

his current prison sentence or otherwise implicates his rights under the Eighth Amendment. The extent of the factual allegations against Defendant McNees as detailed above fail to provide a sufficient basis upon which to grant relief; thus, the undersigned **FINDS** that any such claim should be dismissed. Furthermore, because Gaskins fails to state a claim against Defendant McNees for violation of his constitutional or statutory rights, the undersigned **FINDS** that all claims as to this defendant should be dismissed.

## IV.    <u>**Proposal and Recommendations**</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings made herein and **RECOMMENDS** that the Motions to Dismiss of Defendants Wood County, Joe Kuhl, Special Agent Sean McNees, and the United States of America, (ECF Nos. 30, 33, 40, 60) be **GRANTED**; that Defendant Edelen's Motion to Dismiss, (ECF No. 46), be **DENIED**, in part, and **GRANTED**, in part; that Defendants Wood County, Joe Kuhl, Special Agent Sean McNees and the United States of America be **DISMISSED** and **REMOVED** from the style of the case; that, to the extent Plaintiff intended to include the Parkersburg Narcotics Task Force and SWAT team as defendants, those entities be **DISMISSED** and **REMOVED** from the style of the case; and that Gaskins and the remaining defendants, Sgt. P. M. Edelen and John Doe #3, be permitted to conduct discovery on the claims that remain.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail)

from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Copenhaver and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:** August 24, 2021

Cheryl A. Eifert
United States Magistrate Judge